HERMAN LUTHER DAVIS *v.* STATE OF ARKANSAS

5774                                          486 S.W. 2d 904

Opinion delivered November 27, 1972

*Jack L. Lessenberry,* for appellant.

*Ray Thornton,* Atty. Gen., by: *John D. Bridgforth,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. This is an appeal by Herman Luther Davis from an order of the Pulaski County Circuit Court denying his petition for postconviction relief under our Criminal Procedure Rule No. 1.

Davis was originally charged on information filed by the prosecuting attorney in Pulaski County with the

crime of rape. While that charge was still pending and Davis was free on bail, he became involved in incidents resulting in additional felony charges being filed against him for burglary and second degree murder. Davis was convicted at a jury trial on the rape charge and was sentenced to 40 years in prison.

Following his conviction on the rape charge, Davis took an overdose of several butisol tablets which had been prescribed for his nerves by a physician who regularly attended prisoners in the county jail. On return to the Pulaski County jail following hospitalization for the overdose of drugs, Davis had his girl friend arrange for his appearance before the trial court for disposition of the additional charges then pending against him. Attorney Louis Rosteck was appointed by the court to represent Davis and he appeared with Davis before the trial judge when Davis entered his pleas of guilty to the charges of murder and burglary. Davis was sentenced to the maximum penal servitude of 21 years on each charge with these sentences to run concurrently with each other and with the 40 year sentence on the rape conviction.

Some time after Davis was committed to prison to begin serving the concurrent sentences he filed a Rule 1 petition. At the hearing on that petition, Davis contended that his constitutional rights had been violated in that certain records had not been made available to him and certain witnesses had not been called to testify at his trial. The trial court set the rape conviction aside and granted a new trial. When the rape case came on for a new trial, the prosecuting witness could not be found and the rape charge was dismissed by the trial court for the state's failure to prosecute. Davis then filed an additional Rule 1 petition attacking the validity of his sentences on his pleas of guilty to the murder and burglary charges.

This second petition, designated "Motion to Vacate Sentence Under Criminal Procedure Rule 1," was filed by Davis on August 3, 1971. In it he alleged that his

conviction for rape was set aside in proceedings had on July 29, 1971, and he feels that the trial court was prejudiced against him because of his conviction for rape and for that reason sentenced him to the maximum imprisonment on both the charges of second degree murder and burglary when he entered his pleas of guilty to those charges. Davis alleged in his petition that the evidence available to the state would have been insufficient to support a conviction for murder in the second degree, in that the state could not have proven he actually intended to take the life of the deceased. He alleged, therefore, that he should have been charged with a lesser offense. He also alleged in his verified petition that he was not represented by counsel or informed as to any of his rights pertaining to representation by, or assignment of, counsel. He alleged that he was not aware of any of his constitutional rights and that he at no time waived any rights to assignment of counsel or to be represented by counsel. He alleged that he pled guilty to charges of second degree murder and burglary because he did not believe he could receive a fair trial after his conviction for the crime of rape.

On November 23, 1971, the trial court first appointed William C. McArthur as attorney to represent Davis, and on the following Tuesday, November 30, he relieved Mr. McArthur of the appointment and appointed Louis W. Rosteck to represent Davis on the Rule No. 1 petition. On December 27, 1971, Mr. Davis filed an instrument designated "Motion for Leave to Amend Rule No. 1 Petition" in which he stated that he had previously filed a motion to vacate his sentence under Criminal Procedure Rule No. 1, and in this motion he then stated:

"At the time I submitted my Rule No. 1 Petition I did not contend that I was represented by inadequate counsel but after making a careful study of my allegations in the said Rule No. 1 Petition I do not feel that my court-appointed attorney acted in my best interest and did not have ample time to effectively prepare my defense because he was appointed just fifteen minutes prior to my plea of guilty.

I believe that my court-appointed attorney's advice to plead guilty without any preliminary investigations to my defense was so inadequate as to be tantamount to an effective deprivation of my right to counsel under the Sixth Amendment and the Due Process of Law under the Fourteenth Amendment to the United States Constitution.

Therefore, I respectfully request that Mr. Louis W. Rosteck my court-appointed attorney for the Rule No. 1 hearing be replaced by an attorney that is not related to my case in its original proceedings, and for such other and further relief from time to time as this Honorable Court may deem just and proper."

On January 5, 1972, the trial court relieved Mr. Rosteck as attorney for the petitioner and attorney Jack L. Lessenberry was appointed in his stead. Following a hearing on the Rule No. 1 petition, relief was denied by judgment of the court dated March 24, 1972. The grounds alleged for change of counsel as above set out in the "Motion for Leave to Amend," are as near as Davis comes to alleging ineffective assistance of counsel but, nevertheless, on his appeal to this court Davis has designated the points on which he relies for reversal as follows:

"Appellant was deprived of effective assistance of counsel.

Appellant improvidently entered pleas of guilty."

The gist of Mr. Davis' argument now seems to be that when he entered his pleas of guilty to murder and burglary, he was still under the influence of an overdose of drugs and was easily influenced by the bad advice of his attorney who seemed to feel that it made little difference whether he was guilty of second degree murder and burglary if he could serve the 21 year sentences, on pleas of guilty to those charges, concurrently with the 40 years he would be serving anyway on his rape conviction.

Mr. Davis appeared at the Rule No. 1 hearing and testified in support of his petition. His testimony was directed primarily to the stupefying effect of his overdose of drugs while he was in jail following his conviction on the rape charge. It was stipulated that an attending physician prescribed one-half grain butisol tablets for Davis while he was in jail, and there is no question that Davis was sent from jail to the hospital because of an overdose of the butisol tablets.

Dr. Gilbert Evans testified that butisol is a barbiturate used as a sedative, tranquilizer and also a hypnotic. He said that if a person should take 78 one-half grain butisol tablets at one time, the immediate effect would be loss of consciousness followed by death. He said, however, if a person should survive such massive dose, it is very probable he would have brain damage as a result of oxygen deficiency in the blood supply to the brain cells. Davis insisted that he did take 78 or 79 of the tablets at one time but there was no evidence, except Davis' own testimony, that his mental processes were affected by the drug, and even Davis was not sure about that.

Davis testified that when he was returned to the jail from the hospital following his overdose of drugs, his girl friend visited him in jail and he told her he would like to get something done about the additional charges pending against him. He said that he could not recall his exact instructions to his girl friend.

"She said she would go and see what she could get done or find out, or something, and the next thing I know I was brought up here."

Davis said that prior to being brought to the Pulaski County Court House on that occasion he had seen Mr. Rosteck but had never talked to him. As to the appointment of Mr. Rosteck, Davis testified as follows:

"A. Judge Kirby appointed him whenever I walked in and, since Mr. Camp wasn't here that day, that Mr. Rosteck would do it.

Q. Again, I want you to speak up a little bit louder. Did you confer with Mr. Rosteck about the two remaining offenses with which you had been charged; that is, second degree murder and burglary?

A. We went out in the hall and talked. It wasn't over four or five minutes seemed to me like.

Q. Did Mr. Rosteck leave you and come into Judge Kirby's office and then come back out?

A. I don't remember him leaving.

Q. Well, I want you to tell the Court, to the best of your ability, how much time Mr. Rosteck actually spent with you, conferring with you?

A. To my knowledge, I don't think it was over five minutes out there in the hall. I know it was a very short time."

Mr. Davis testified that he did attempt to tell Mr. Rosteck something about how the homicide had occurred but that he does not remember what he tried to tell Mr. Rosteck about it. Mr. Davis was then asked if there was anything else he desired to say in support of his petition and he answered as follows: "Just that I am not guilty of it." Under questioning by the court the petitioner then testified as follows:

"Didn't you call me and indicate that you wanted to come up here and enter a plea of guilty?

PETITIONER DAVIS: I told Margaret I wanted to get something done.

THE COURT: That's what you meant, wasn't it?

PETITIONER DAVIS: I guess it was, Your Honor."

Mr. Louis Rosteck was called as a witness in support of the petition. He testified that he could not remember

the exact conversation he had with Mr. Davis when the guilty pleas were entered a year and a half previously, but that he conferred with Davis about thirty minutes before Davis entered his pleas of guilty. Mr. Rosteck was questioned concerning the disposition of the rape conviction and stated that his information on that case was only hearsay, whereupon the judge of the trial court stated as follows:

"The Court's recollection is that I set it aside under the Rule One hearing on the theory that Alonzo Camp (Davis' attorney) failed to obtain records from the State Hospital that Herman thought he ought to have and hadn't called certain witnesses. I set it down for a new trial and, when the trial date came up, nobody could locate the prosecuting witness so I dismissed it for failure to prosecute."

Mr. Rosteck testified that it was difficult for him to remember exactly what was said to and by Davis in personal conversation as distinguished from what was later written to him by Davis. Mr. Rosteck then testified as follows:

"Q. But you did not confer with them in entering the plea of guilty; is that right?

A. I didn't enter a plea of guilty. He entered the plea of guilty on his own. If I recall the circumstances correctly, I talked to him; then, when the point came up that he was already serving a forty year sentence, he asked me to ask the Court—now, this is what I did; if he would enter a plea of guilty, would the Court run the sentences concurrent with the time he had, and I recall talking to Judge Kirby and asking him the question, and the Judge told me that he would. I came back, talked to Mr. Davis further and told him that the Judge said that if he would enter a plea of guilty, that he would run the sentences concurrent. I don't remember how much but, anyway, twenty-one years was the maximum. I explained that to him, that twenty-one was the

maximum under the second degree and the burglary was twenty-one and, at that time, there was no necessity after that because he said that is what he wanted to do, so there wouldn't have been any purpose to have had more conversation regarding a trial on the murder charge, or witnesses, or anything else.

\* \* \*

A. I did not make any recommendations to him, and he knows I didn't because I explained the facts and, as I say, I explained them to Mr. Davis with the—with what he had at that time, and you will have to face it, what it was at that time, it seemed like a pretty good deal and he seemed very well pleased to enter a plea of guilty at that time.

\* \* \*

Q. The petitioner also specifically states that you advised him to plead guilty; is this true or not?

A. No, I didn't advise him to plead guilty. Now, that, I can say for certain. When he wanted to find out whether the sentences would be run concurrent and I told him at that time, he said that he would enter a plea of guilty, and I think I mentioned the fact to him, and I won't deny it, I said, 'Well, it doesn't look like you are losing anything on that,' and I was taking into consideration that he already had forty years, and the Judge ran the sentence concurrent with twenty-one, that would not cost him any time, and I think I probably told him that. So, as far as me pursuing—

Q. (Mr. Anderson Interposing) Did you ask the defendant if he was pleading guilty because he was, in fact, guilty?

A. Well, he told me he was.

Q. He told you he was guilty?

A. Yes."

On redirect examination Mr. Rosteck testified as follows:

"Q. You say that Mr. Davis told you he was guilty; yet, he told you of the defense witnesses that would appear—

A. I mean, as far as killing the man, yes. As I say, I didn't discuss the whole offense with him, but he admitted killing some man. When I asked him, 'Well, did you do this?' he said, 'Yes, I did.' Now, whether there was a defense to that, Mr. Lessenberry, I do not know because we did not go into the case proper because there was no necessity. He wanted to find out if he entered a plea of guilty to the charges, would the Judge run them concurrent."

No general guidelines have been laid down in Arkansas by which we gauge the effectiveness of counsel. The state, as appellee in the case at bar, directs our attention to the 1960 New York case of *People* v. *Tomaselli*, 165 N. E. 2d 551, where the petitioner for a writ of *coram nobis* presented a situation similar to the one now before us. In that case, on advice of court appointed counsel, Tomaselli was given a suspended sentence on a plea of guilty to the crimes of forgery and uttering when he was 16 years of age. Six months later he was convicted of the crime of robbery and because of the forgery conviction he was sentenced, as a second felony offender, to imprisonment for a term of 30 years, plus an additional five year term for being armed. Tomaselli alleged that he was "deprived of due process of law" in that his legal representation was "so stunted and withered; so deficient and inadequate as to amount to a sham and a mockery of justice." In affirming the action of the trial court in denying the petition, the Court of Appeals of New York said:

". . . [T]here is denial of effective representation of counsel only when the representation given is so patently lacking in competence or adequacy that it becomes the duty of the court to be aware of it and correct it.

Indeed, to hold otherwise would require a rule that a conviction must be vacated solely on the ground that assigned counsel was negligent or otherwise at fault in performing his duty. Although we do not condone or make light of an alleged failure on the part of any lawyer to serve his client adequately, it furnishes no basis either in reason or authority for setting aside a judgment."

An attorney is presumed to be competent or he would not be licensed to practice law, and a practicing attorney is presumed to be competent or he would not be appointed by a trial judge to represent an indigent defendant in a criminal case. The federal court standards on the effectiveness of counsel in guilty pleas have long recognized the presumption of competency.

In *Poole* v. *United States,* 438 F. 2d 325 (1971), the court said:

"There is a presumption of the competency of court appointed counsel. *Slawek* v. *United States,* 413 F. 2d 957 (8th Cir. 1969). A charge of inadequate representation can prevail

'only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court. *Hanger* v. *United States,* 428 F. 2d 746, 748 (8th Cir. 1970).'

\* \* \*

'If a movant under Section 2255 makes no allegations of ineffectiveness or incompetence of counsel, save

in matters normally within the realm of counsel's judgment, he is not entitled to a hearing.' *Mitchell, supra,* 259 F. 2d 787.''

See also *North Carolina* v. *Alford,* 400 U. S. 25 (1970); *Harris* v. *United States,* 434 F. 2d 23 (1970) and *McMann* v. *Richardson,* 397 U. S. 759, 711, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970).

In the case at bar the 21 year prison sentences meted out to Davis on his pleas of guilty, not only ran concurrent with the 40 year sentence on the rape conviction, they also ran concurrent with each other. Davis was not exonerated or acquitted on the rape charge. He was granted a new trial on that charge and the charge was later dismissed only because the alleged victim or prosecuting witness could not be found to testify at the second trial. The Rule 1 petition Davis filed in the rape case is not before us, but according to the trial court's "recollection," it was granted because the attorney who represented Davis at the trial failed to procure and offer certain evidence which Davis thought should have been offered.

The record is silent as to why Davis did not question the validity of the conviction on his guilty pleas when he filed his Rule 1 petition questioning the validity of his conviction for rape. Section (H) of the Rule provides:

"All grounds for relief available to a prisoner under this rule must be raised in his original or amended petition. Any grounds not so raised or any grounds finally adjudicated or intelligently and understandingly waived in the proceedings which resulted in the conviction or sentence or in any other proceedings that the prisoner may have taken to secure relief from his conviction or sentence, may not be the basis for a subsequent petition."

Davis did not question the competency of his court appointed attorney or the adequacy of his representation

in either of the original petitions for post-conviction relief, but in his second original petition he alleged that when he entered his pleas of guilty, he was not represented by an attorney at all and was not advised that he was entitled to one. He first registered dissatisfaction with the services of his attorney in the amendment requesting a change of attorneys, and he first mentions "ineffective assistance of counsel" in his designation of the points he relies on, in the brief he has filed on this appeal.

"Improvident" is defined in Random House Dictionary as "lacking foresight, incautious, unwary, neglecting to provide for future needs." An "improvident" plea of guilty is not a specific ground for relief set out in Criminal Procedure Rule No. 1 which provides under § (A) as follows:

"A prisoner, in custody under sentence of a circuit court and whose case was not appealed to the Supreme Court, claiming a right to be released, or to have a new trial, or to have the original sentence modified on the ground:

(a) that the sentence was imposed in violation of The Constitution and laws of the United States or this State; or

(b) that the court imposing the sentence was without jurisdiction to do so; or

(c) that the sentence was in excess of the maximum authorized by law; or

(d) that the sentence is otherwise subject to collateral attack;

may file a verified motion at any time in the court which imposed the sentence, praying that the sentence be vacated or corrected."

We do not reach the appellant's assignment stating that the "appellant improvidently entered pleas of guilty," for the reason that this contention was not made or argued at either of the Rule 1 hearings before the trial court and is raised by the appellant for the first time on this appeal. See *Fleschner* v. *State,* 253 Ark. 58, 484 S.W. 2d 342.

The judgment is affirmed.