## Robert HORN v. STATE of Arkansas

CR 73-42                                       495 S.W. 2d 152

Opinion delivered June 4, 1973

*Don Lampton,* Public Defender, for appellant.

*Jim Guy Tucker* Atty. Gen. by: *Richard Mattison,* Assty. Atty. Gen. for appellee.

Frank Holt, Justice. Upon a plea of guilty, appellant received a sentence of 15 years for kidnapping and 15 years for robbery to be served concurrently. He was credited with the time he was in jail awaiting trial. Approximately a year later, he filed his present pro se motion to vacate his sentence pursuant to our Criminal Procedure Rule 1. He alleged, *inter alia,* that he was denied the effective assistance of counsel. The trial court, pursuant to subparagraph (C) of Rule 1, held in written findings of fact and conclusions of law that the

records in the case conclusively show that the appellant was not entitled to an evidentiary hearing. On appeal the appellant contends for reversal that the trial court erred in refusing to grant him a hearing on his petition for postconviction relief.

Essentially, appellant's pro se allegations were that his retained counsel repeatedly told him that upon a trial he would receive 99 years for kidnapping and 21 years for robbery and would receive additional time inasmuch as he was charged as a habitual criminal; that these sentences would run consecutively and there wasn't anything he (counsel) could do to prevent it; that appellant first refused to plead guilty because he was innocent of the alleged crimes; that his attorney "kept pressuring me to take his advice," and after several conferences that "I was placed in such fear as to be unable to adequately confer and consult with him, due to the undue pressure brought to bear upon me by the court and by my attorney;" that his plea of guilty was coerced and improperly induced by his defense attorney rather than being voluntary; that his defense counsel overreached and improperly pressured him to plead guilty; that his attorney refused to file motions and question illegal procedures and evidence; and that the trial court failed to protect the defendant from the "above mentioned acts of defense counsel and trial prosecutor. . ."

When appellant appeared and pleaded guilty to the alleged offenses as a habitual criminal, a record of the proceedings was made. He was accompanied by his retained counsel. Before accepting the appellant's plea of guilty, the trial court thoroughly and extensively questioned the appellant with reference to whether his plea was voluntarily made. Actually, the court's searching inquiries constituted 7 1/2 pages of the transcription of the plea proceedings. Summarizing appellant's anwers to the trial court's inquiries, appellant stated that the trial court had previously read to him the charges pending against him; that he knew the nature of the charges, when they allegedly occurred and acknowledged to the court some of the circumstances attending them; that he was previously convicted of a felony which in-

voked the provisions of the habitual criminal statute; that the effect would be to increase the minimum punishment if found guilty either by the jury or the court; that he had employed his own counsel "sometime back;" that he had had ample time to consult with him; that he had read, understood and signed a "Plea Statement;" that before dong so he had had time to discuss it with his counsel; that he had no questions he desired to ask the court; that there was no language in the plea statement that needed any explanation; that the court could rely upon what he was representing to the court; that he desired to plead guilty to the charges of robbery and kidnapping; that he had had time to discuss his plea that morning again with his counsel and that his plea was freely and voluntarily made by him; that the court advised him the processing of his plea was being made a part of the record. Then he told the court in answer to a specific inquiry that he had nothing to say before the court pronounced sentence.

The "Plea Statement" essentially reiterates the inquiries made by the trial court at the time of accepting the plea. It, also, apprised appellant that he had the right to a jury trial with the burden upon the state to prove his guilt beyond a reasonable doubt and that by signing the plea statement the appellant acknowledges that he had discussed his case fully with his attorney and was "satisfied with his services." The last paragraph of this document reads:

"I HAVE READ EVERYTHING ON THIS PAPER. I UNDERSTAND WHAT IS BEING TOLD ME, WHAT MY RIGHTS ARE, AND THE QUESTIONS THAT HAVE BEEN ASKED. MY ANSWER IS 'YES' TO ALL 5 QUESTIONS. I KNOW WHAT I AM DOING AND AM VOLUNTARILY PLEADING GUILTY BECAUSE I AM GUILTY AS CHARGED."

It was, also, signed by his counsel to the effect that he had reviewed the document with the appellant; that to the best of his judgment the appellant understands it and the appellant's plea of guilty is consistent with

the facts related to him by appellant as well as counsel's own investigation of the case.

We think the language in *Robertson* v. *State,* 252 Ark. 333, 478 S.W. 2d 878 (1972), is apt in the case at bar. There we said:

> "According to the record we have summarized, this appellant was given every opportunity to speak out, either in person or by employed counsel, and to raise any possible defense he had to the charges. If he had any such defenses it was incumbent that he raise them. In the face of the record made by the trial court and here summarized, appellant is not entitled at this late date to collaterally attack his sentence."

See, also, *Stallins* v. *State,* 254 Ark. 137, 491 S.W. 2d 788 (1973). Our view is reinforced by the very recent case of *Tollett, Warden* v. *Henderson,* 411 U.S. 258, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973), where a collateral attack was made upon a guilty plea rendered upon the advice of counsel. The appropriate language is:

> "***But the Court in *Brady* and *Parker,* as well as in *McMann,* refused to address the merits of the claimed constitutional deprivations that occurred prior to the guilty plea. Instead, it concluded in each case that the issue was not the merits of these constitutional claims as such, but rather whether the guilty plea had been made intelligently and voluntarily with the advice of competent counsel. . . . .

> "We hold that after a criminal defendant pleads guilty, on the advice of counsel, he is not automatically entitled to federal collateral relief on proof that the indicting grand jury was unconstitutionally selected. The focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of antecedent constitutional infirmity. A state prisoner must, of course, prove that some constitutional infirmity occurred in the proceedings. But the inquiry does not end

at that point, as the Court of Appeals apparently thought. If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases,' *McMann* v. *Richardson, supra,* at 771. . . .

"Thus while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief . . . .

"He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann."

The presumption that counsel is competent is recognized in both our state and federal courts. *Davis* v. *State,* 253 Ark. 484, 486 S.W. 2d 904 (1972), *Slawek* v. *United States,* 413 F. 2d 957 (8th Cir. 1969). Appellant relies upon our recent decision in *Cullens* v. *State,* 252 Ark. 995, 482 S.W. 2d 95 (1972). We do not consider it applicable in the case at bar. There the proceeding attending the plea was not nearly as comprehensive as here.

In the case at bar we note that the appellant is 28 years of age, who is not unfamiliar with court proceedings inasmuch as he was charged and pleaded guilty as a habitual criminal. If the very thorough and painstaking proceedings conducted by the trial court attending appellant's plea of guilty cannot pass constitutional muster, it is most difficult to see how any plea of guilty cannot be collaterally attacked in a postconviction proceeding requiring an evidentiary hearing upon the mere assertion that a plea of guilty was the result of "undue pressure" and ineffective assistance of counsel.

Inasmuch as we agree with the trial court that appellant's plea of guilty was freely and voluntarily made and not a result of ineffective assistance of counsel, any other possible defenses asserted in appellant's petition were waived. *Rimmer* v. *State,* 251 Ark. 444, 472

S.W. 2d 939 (1971), *Wilson v. State*, 251 Ark. 900, 475 S.W. 2d 543 (1972).

Affirmed.

FOGLEMAN, J., not participating