Cite as 2023 Ark. App. 426

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CR-22-548

| | |
|---|---|
| ROBERT DEAN PENNY<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered October 4, 2023<br><br>APPEAL FROM THE BAXTER COUNTY CIRCUIT COURT<br>[NO. 03CR-17-446]<br><br>HONORABLE JOHN R. PUTMAN, JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Robert Dean Penny filed this pro se appeal after the Baxter County Circuit Court entered an order denying his petition for postconviction relief filed pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. We affirm.

On September 18, 2019, a Baxter County jury found Penny guilty of second-degree criminal mischief and one count of aggravated assault, acquitted him on a second count of aggravated assault, and deadlocked on the first-degree-murder charge. The circuit court fined him $10,000 on each of the two charges and sentenced him to six years' imprisonment on each conviction, to be served consecutively. We affirmed on direct appeal. *Penny v. State*, 2021 Ark. App. 30.[1]

---

[1] As recited in the direct appeal, on December 5, 2017, Penny shot his landlord, Chester Hornowski, twenty-two times. Afterward, he attempted to flee the scene in his truck,

On May 6, 2021, Penny entered a negotiated guilty plea to second-degree murder, and he received a sentence of twenty-five years' imprisonment, to be served concurrently with his other sentences, and a $2,000 fine. An amended sentencing order to that effect was entered on May 28, 2021.[2]

On June 2, Penny filed a Rule 37 petition in which he alleged (1) his guilty plea to second-degree murder was coerced, (2) he was actually or constructively denied counsel because his attorney coerced him to plead and refused to permit him to present his affirmative defense of self-defense, and (3) he was denied due process of law because he received ineffective assistance of counsel and because trial counsel did not use a witness, Dale Costello, who gave a statement as to the landlord's "violent background" and "extensive criminal history." He also requested the appointment of counsel pursuant to Ark. R. Crim. P. 37.3(b) and maintains that the court's failure to appoint him counsel in the Rule 37 proceeding continued the deprivation of counsel at a second critical stage, depriving him of due process. The State moved to dismiss the petition due to several deficiencies.

At the October 21 hearing, Penny read into the record an answer to the State's motion to dismiss his Rule 37 petition, clarifying that his Rule 37 petition was intended to

---

almost running over Sgt. Doug Muerer, a patrol officer with the Baxter County Sheriff's Office. After nearly running over Sergeant Muerer, Penny's truck hit the hardened surface of a roadway and went airborne, landing on the Baxter County Sheriff's new Chevrolet Tahoe. The repair estimate for the Tahoe was $18,390.95. *Id.* at 1–2.

[2]As the State notes, the murder conviction is entered in the same case as Penny's other jury-trial convictions, yet those convictions are not listed in the amended sentencing order. That appears to be a scrivener's error.

challenge only his guilty plea to the murder charge, contending that his petition met the format requirements of Rule 37 and stating that he had been provided the verification language by "the state agents, his keep locks." The circuit court took the motion under submission and held the scheduled hearing.

Penny testified that his trial counsel, Sam Pasthing, ordered him three times to perjure himself at the plea hearing by telling him to tell the circuit court that he murdered Hornowski. Penny contended that he acted in self-defense. He claimed Pasthing sent him a letter saying "that the prosecutor already had a bite out of me and that he thought that I should do this." Penny also noted that the prosecution originally had asked for the death penalty, though he admitted on cross-examination that request had been dropped. He also admitted on cross-examination that he had wanted Pasthing to enter into negotiated-plea discussions.

Penny conceded that, by pleading guilty to second-degree murder, his parole eligibility was more favorable than it would have been if he had been convicted of first-degree murder and that he would be eligible for parole in 2027.

Further, Penny admitted that Pasthing had spoken to the foreperson after his trial and learned that one juror wanted to convict him of first-degree murder, three wanted to convict him of second-degree murder, and the rest wanted to convict him of manslaughter.

Penny testified that he met a man named Dale Costello in jail and that he supplied Pasthing with Costello's written statement to the effect that Hornowski was a violent person. He testified that he was not sure how Costello was associated with Hornowski, that the

3

statement was vague, and that Costello wanted protection before he would recount all his information.

Penny acknowledged that the circuit court went over questions on the guilty-plea statement with him and that he responded yes to every question, as Pasthing had instructed him. He acknowledged that he answered the fifth question affirmatively, indicating that he was pleading guilty freely and voluntarily and not because he had been threatened or promised anything in return. He admitted that he had signed the statement and answered the questions the same way orally when asked by the circuit court at the hearing. Penny also admitted that he knew that if he did not accept the plea agreement he would go to trial.

Pasthing testified that he represented Penny in his trial in 2019, at which the jury was instructed as to Penny's claim of self-defense. After the trial, he talked to the jury foreperson and learned that the jury was "eleven to one to acquit" on the first-degree-murder charge, "nine to three to convict" on the lesser-included offense of second-degree murder, and "eight to four on manslaughter." He tried to talk to other jurors, but the foreperson was the only one who would talk to him. Pasthing relayed that information to Penny. Penny authorized him to begin negotiations for a plea bargain.

Pasthing testified that the penalty for first-degree murder, a Class Y felony, is ten to forty years, or life, with no parole eligibility for a life sentence and parole eligibility on a term-of-years sentence after having served 70 percent of the sentence. Second-degree murder is a Class A felony with a sentencing range of six to thirty years with possible parole eligibility after serving as little as 25 percent of the sentence. The State offered a plea bargain for the

4

charge of second-degree murder. Pasthing conveyed the offer to Penny, and Penny authorized him to accept the plea. Pasthing went over the plea statement with Penny, and they filled it out with Penny initialing everything.

Pasthing testified that Penny understands English and can read and write the language. Penny never indicated to Pasthing that he did not want to enter the plea or that he wanted to withdraw the plea. Pasthing testified that he did not feel he pressured Penny to enter a plea bargain, and he stated he did not "think a person can pressure Mr. Penny." He characterized Penny as "resolute in his views."

On cross-examination, Pasthing stated that he "never once told [Penny] to perjure [himself]." Regarding Costello's statement, Pasthing said he did not specifically recall the name, but there was a person who testified at trial that Hornowski was pretty rough on his tenants, and Pasthing thought that testimony was helpful to Penny's case.

In an order entered March 2, 2022, the circuit court held that the petition was timely filed as to the second-degree-murder conviction but dismissed the petition as untimely with regard to the other charges. It denied the remainder of the State's motion to dismiss on procedural and jurisdictional grounds. Reaching the merits of the petition on the second-degree-murder conviction, the circuit court found that the petition alleged as grounds for relief a coerced confession, denial of a fair and impartial trial, actual or constructive denial of counsel, and denial of due process of law. After reviewing the evidence presented at the hearing, the circuit court held that Penny was not denied effective assistance of counsel and

that none of the grounds for relief alleged in his petition had merit. The petition was denied and dismissed with prejudice. Penny's pro se appeal is now properly before this court.

When reviewing a circuit court's ruling on a Rule 37.1 petition, we will not reverse the circuit court's decision granting or denying postconviction relief unless it is clearly erroneous. *Kemp v. State*, 347 Ark. 52, 55, 60 S.W.3d 404, 406 (2001). A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.*

The benchmark question to be resolved in judging a claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Norris v. State*, 2013 Ark. 205, 427 S.W.3d 626 (per curiam). A Rule 37 petitioner's ineffective-assistance-of-counsel claims are analyzed under the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires a petitioner to show that his counsel's representation was deficient, and he suffered prejudice as a result. "Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable." *State v. Barrett*, 371 Ark. 91, 96, 263 S.W.3d 542, 546 (2007).

Pursuant to *Strickland* and its two-prong standard, a petitioner raising a claim of ineffective assistance must first show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the

6

United States Constitution. *Williams v. State*, 369 Ark. 104, 251 S.W.3d 290 (2007). A petitioner making an ineffective-assistance-of-counsel claim must show that his counsel's performance fell below an objective standard of reasonableness such that counsel committed errors so serious as to not be functioning as counsel at all. *Flores v. State*, 350 Ark. 198, 205–06, 85 S.W.3d 896, 901 (2002).

A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Springs v. State*, 2012 Ark. 87, 387 S.W.3d 143. The burden is on the petitioner to overcome this presumption by identifying specific acts or omissions by counsel that could not have been the result of reasoned professional judgment. *Bond v. State*, 2013 Ark. 298, at 7–8, 429 S.W.3d 185, 191–92; *see also Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). "'Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel.'" *Swain v. State*, 2017 Ark. 117, at 3, 515 S.W.3d 580, 583 (quoting *Noel v. State*, 342 Ark. 35, 41, 26 S.W.3d 123, 127 (2000)).

Second, in a case such as Penny's, in which a defendant pleads guilty to a crime, "the only claims cognizable in a proceeding pursuant to Rule 37.1 are those that allege that the plea was not made voluntarily and intelligently or that it was entered without effective assistance of counsel." *Scott v. State*, 2012 Ark. 199, at 4–5, 406 S.W.3d 1, 3–4. To establish

7

prejudice, a petitioner who has pleaded guilty "must demonstrate a reasonable probability that, but for counsel's errors, he would not have so pleaded and would have insisted on going to trial." *Id.* at 5, 406 S.W.3d at 4. A petitioner "who has entered a guilty plea normally will have considerable difficulty in proving any prejudice, as the plea rests upon an admission in open court that the [petitioner] did the act charged." *Id.* at 8–9, 406 S.W.3d at 5.

An appellate court defers to the circuit court on matters of witness credibility on appeals from the denial of postconviction relief. *E.g.*, *Smith v. State*, 2010 Ark. 137, at 2, 361 S.W.3d 840, 844. Under these standards, we hold that the circuit court did not clearly err by denying Penny's Rule 37 petition.

Penny presented only his own self-serving testimony to demonstrate ineffective assistance of counsel, and while he contended that Pasthing coerced him into pleading guilty, Pasthing testified that he did not. The circuit court found Pasthing's testimony more credible. The plea bargain reduced the charge against Penny from the Class Y felony of first-degree murder to the Class A felony of second-degree murder and, according to Pasthing, made it so that Penny would be required to serve much less time before becoming parole eligible.

Penny acknowledged that he answered yes to the questions on the guilty-plea statement and did so again when asked by the circuit court at the plea hearing, including the question affirming that he had not been coerced to make the plea. Penny did not contend that he would not have taken the plea and would have insisted on going to trial; he merely

8

complained that he had to "perjure himself" at the plea hearing by pleading guilty to second-degree murder.

Moreover, the facts of the case support a conviction for second-degree murder. Arkansas Code Annotated § 5-10-103(a) (Repl. 2013) provides that a person commits second-degree murder if he "knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life; or with the purpose of causing serious physical injury to another person, [he] causes the death of any person."

Here, Penny admittedly shot Hornowski multiple times, hitting him with every shot, then immediately fled the scene to escape police at such a speed that he nearly ran over a police officer, sent his car airborne, and crash-landed on top of a police vehicle, causing over $18,000 in damage. *Penny*, 2021 Ark. App. 30, at 1–2; *see, e.g.*, *Keesee v. State*, 2022 Ark. 68, at 15, 641 S.W.3d 628, 640 (fleeing to avoid apprehension by law enforcement may be circumstantial evidence of guilt). The jury already had rejected his self-defense argument. Under these circumstances, the circuit court did not clearly err by denying relief since Penny did not meet his burden of proof under the *Strickland* standard.

Penny also argues that he was deprived of his right to counsel at the Rule 37 hearing, violating his due-process rights. We disagree. Arkansas Rule of Criminal Procedure 37.3(b) (2020) provides that the appointment of counsel in a Rule 37 proceeding is discretionary with the circuit court. Moreover, in Arkansas, a Rule 37 postconviction proceeding is not a critical stage of a criminal proceeding and is, instead, civil in nature, so there is no absolute

9

right to counsel. *E.g.*, *Walden v. State*, 2016 Ark. 306, at 11, 498 S.W.3d 725, 733. To show that a circuit court abused its discretion by failing to appoint counsel in a Rule 37 proceeding, an appellant must make some substantial showing that his petition included a meritorious claim. *Id.* Here, Penny makes no such showing. We hold that the circuit court did not abuse its discretion by denying Penny's request for an attorney to represent him in his Rule 37 proceeding; accordingly, we affirm.

Affirmed.

VIRDEN and HIXSON, JJ., agree.

*Robert D. Penny*, pro se appellant.

*Tim Griffin*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.