Cite as 2025 Ark. App. 37

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-23-521

| | |
|---|---|
| HEATH HUNSAKER<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered January 29, 2025<br><br>APPEAL FROM THE GREENE COUNTY CIRCUIT COURT<br>[NO. 28CR-22-766]<br><br>HONORABLE CHRIS THYER, JUDGE<br><br>AFFIRMED |

**BART F. VIRDEN, Judge**

Appellant Heath Hunsaker pleaded guilty to first-degree murder and was sentenced to forty years' imprisonment plus a three-year enhancement for using a firearm in the commission of the offense. Hunsaker subsequently filed a petition for postconviction relief pursuant to Ark. R. Crim. P. 37.1 alleging that his guilty plea should have been set aside because it was entered without the advice of competent counsel. The Greene County Circuit Court denied Hunsaker's petition. On appeal, Hunsaker argues that the trial court erred in rejecting his ineffective-assistance-of-counsel claims and by denying his petition without holding an evidentiary hearing. He also asserts that *Horn v. State*, 254 Ark. 651, 495 S.W.2d 152 (1973), and its progeny are unconstitutional. We affirm.

## I. *Background*

On April 8, 2022, Hunsaker was charged with first-degree murder in the shooting death of Matt Hale on March 8. Clay County Public Defender Jacob Holmes was appointed to represent Hunsaker. Due to publicity, a motion to change venue was granted, and the case was transferred from Clay County to Greene County. A jury trial was scheduled for the week of December 5 through 8, 2022. On November 7, Brian Miles, managing public defender for both Clay and Greene Counties, entered his appearance on Hunsaker's behalf. On November 28, the morning of the omnibus hearing, a plea offer was made, and defense counsel requested time to consult with Hunsaker. The trial court was later informed that Hunsaker had accepted the plea, and a change-of-plea hearing was held.

At the hearing, Hunsaker was asked whether he understood the charges, the range of punishment, and the rights he would be waiving by pleading guilty. Hunsaker said that he understood. He was then asked about the plea statement that he had signed. He said that the plea statement and sentence recommendation had been explained to him and that he had no questions with regard to either document. Hunsaker said that he was pleading guilty to the first-degree murder of Matt Hale because he was, in truth and in fact, guilty of the offense. The prosecutor then described the offense as having begun with a dispute involving Hunsaker's estranged or ex-wife, and Hunsaker admitted shooting Hale with the purpose of killing him. The following colloquy occurred:

> Q:    Mr. Hunsaker, have you had plenty of time to speak with Mr. Holmes and Mr. Miles about the charges that were filed against you?

A:     Yes, sir.

Q:     Are you satisfied with their advice?

A:     Yes, sir.

Q:     Do you have any complaints to make about either of those attorneys to me today?

A:     No, sir.

On February 24, 2023, Hunsaker filed a Rule 37 petition in which he argued that *Horn* and its progeny are unconstitutional, that he received ineffective assistance from Holmes and Miles for their failure to communicate with him, and that Holmes in particular was ineffective in that both his performance and advice were deficient. Hunsaker attached the affidavit of his mother, Derenda Underwood, to his petition. She was present when Holmes first spoke with Hunsaker about the State's supposed plea offer, when Holmes informed Hunsaker about his lack of experience, and when Holmes told Hunsaker what would likely happen if they went to trial. Underwood was also there when Hunsaker signed the plea agreement in the presence of both Holmes and Miles.

II.  *Standard of Review*

When reviewing a trial court's denial of postconviction relief on a claim of ineffective assistance of counsel, we follow the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner claiming ineffective assistance of counsel must show that counsel's conduct fell below an objective standard of reasonableness and that this deficient performance prejudiced the defense. *Polivka v. State*, 2010 Ark. 152, 362

S.W.3d 918. Our review of a defense counsel's performance is highly deferential, and a strong presumption exists that counsel's conduct falls within a wide range of reasonable professional assistance. *Id.* In order to prove an ineffective-assistance-of-counsel claim, the defendant must make allegations substantiated with factual support; the allegations may not be conclusory. *Id.*

We will not reverse a denial of postconviction relief unless the trial court's findings are clearly erroneous. *McClure v. State*, 2024 Ark. App. 487, 698 S.W.3d 698. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.* There are only two issues for review on appeal from the denial of a Rule 37 petition following a guilty plea—whether the guilty plea was "intelligently and voluntarily entered" and whether it was made "on the advice of competent counsel." *Id.* at 6–7, 698 S.W.3d at 703 (citing *Polivka*, 2010 Ark. 152, at 5, 362 S.W.3d at 923). To establish prejudice, a petitioner who has pleaded guilty must demonstrate a reasonable probability that, but for counsel's errors, he would not have so pleaded and would have insisted on going to trial. *Penny v. State*, 2023 Ark. App. 426. A petitioner who has entered a guilty plea will have considerable difficulty in proving any prejudice since the plea rests on an admission in open court that he did the act charged. *Id.*

III. *Discussion*

A. Ineffective Assistance of Holmes and Miles

4

Hunsaker argues that both Holmes and Miles were ineffective because they failed to reasonably communicate with him and failed to keep him informed during the pendency of the case. He argues that the attorneys did not provide him with a copy of discovery and did not review the evidence with him. Hunsaker asserts that his first conversation with trial counsel outside of the courtroom was when Holmes misinformed him regarding the State's plea offer—Holmes had told him that first- and second-degree murder were "off the table." Hunsaker claims that his second conversation was when Holmes admitted that he could not try the case and that there would be a "last-minute replacement" with Miles.

Hunsaker contends that there was no strategic benefit to not providing him with discovery, by misinforming him about the plea offer, and informing him that another attorney would have to try the case. He asserts that, had Holmes and Miles kept him informed, he could have made an informed decision about whether he wanted a jury trial. Hunsaker claims that their errors directly contributed to his decision to enter an unintelligent and involuntary plea and that, but for their errors, he would have insisted on a jury trial.

Hunsaker does not explain what information he could have provided to Holmes and Miles had they visited or communicated with him more often or what would have been uncovered had they given him a copy of discovery or reviewed the evidence with him. He also does not explain what information Holmes and Miles failed to relay to him that would have kept him sufficiently informed. Further, Hunsaker does not explain how the alleged misinformation about the State's plea offer resulted in prejudice when he later pleaded guilty

to one of the charges that he had been told was "off the table." He also does not explain how the prospect of having a second, more experienced attorney represent him at trial influenced his decision to plead guilty.

The trial court rejected Hunsaker's claims that Holmes and Miles were ineffective because he made only conclusory statements about their supposed failures without setting forth any proof to overcome the presumption that both attorneys had provided effective assistance. We agree that Hunsaker's claims were conclusory and hold that the trial court did not clearly err in rejecting the notion that Holmes and Miles provided ineffective assistance by not sufficiently communicating with Hunsaker.

## B. Ineffective Assistance of Holmes

With respect to Holmes, Hunsaker argues separately that he was ineffective because he waited until the week of trial to inform him that he (Holmes) could not try the case. Hunsaker states that Holmes admitted he was neither skilled nor experienced enough to represent him at trial. Hunsaker argues that waiting until the week of trial to inform him constituted deficient performance and that the error prejudiced him because he had been led to believe that he had no choice but to plead guilty. Hunsaker contends that there was a reasonable probability that, but for Holmes's error, he would have insisted on a jury trial.

Miles had entered his appearance three weeks before Hunsaker claims that he first learned of Holmes's lack of experience. Hunsaker does not explain why he pleaded guilty due to Holmes's last-minute revelation when Miles was prepared to be lead counsel at trial. Hunsaker did not allege that Miles lacked trial experience. Indeed, the trial court found that

6

Hunsaker's claim was a "leap in logic" and noted that inexperience is not the same as deficient performance. The trial court rejected Hunsaker's claim that Holmes was ineffective because Hunsaker again had made only conclusory statements about Holmes's supposed deficient performance without any proof. We cannot say that the trial court clearly erred in rejecting the claim of ineffective assistance related to Holmes.

## C. Denial of Petition Without an Evidentiary Hearing

Hunsaker next argues that the trial court erred in denying his petition without holding an evidentiary hearing. He asserts that there was evidence that defense counsel misinformed him of the plea offer, did not review the plea statement with him,[1] and made him feel like he had no choice but to plead guilty. Hunsaker argues that these were more than conclusory allegations and that the record should have been more fully developed at an evidentiary hearing.

An evidentiary hearing should be held in a postconviction proceeding unless the files and record of the case conclusively show that the petitioner is entitled to no relief. *Davis v. State*, 2021 Ark. App. 210. When the trial court concludes without a hearing that the petitioner is not entitled to relief, Ark. R. Crim. P. 37.3 requires the trial court to make written findings specifying the parts of the record that form the basis of the trial court's decision. *Id.* If the trial court fails to make such findings, it is reversible error unless the

---

[1]Hunsaker is raising this argument for the first time on appeal. Although Underwood stated in her affidavit that Holmes and Miles did not go over the plea statement with Hunsaker—which is contrary to Hunsaker's testimony at the change-of-plea hearing— Hunsaker did not make any argument regarding such failure in his postconviction petition.

record before this court conclusively shows that the petition is without merit. *Id.* Here, the trial court made extensive written findings and cited the record—specifically, the plea colloquy and the guilty-plea statement—in denying Hunsaker's claims. We hold that the trial court did not err in denying an evidentiary hearing because the record conclusively shows that Hunsaker was not entitled to relief.

### D. Unconstitutionality of *Horn* and Its Progeny

In *Horn*, *supra*, our supreme court held that the record of guilty-plea proceedings established that a petitioner's plea had been freely and voluntarily made and had not been the result of ineffective assistance of counsel. Hunsaker argues that *Horn* stands for the proposition that petitioners cannot receive relief if they had an opportunity to express dissatisfaction with counsel but failed to do so. He also asserts that this opportunity and the plea statement are conclusive evidence of effective assistance, thus the holding of *Horn* and its progeny—*Woods v. State*, 278 Ark. 271, 644 S.W.2d 937 (1983), and *Moore v. State*, 273 Ark. 231, 617 S.W.2d 855 (1981)—renders Ark. R. Crim. P. 26 and Rule 37 "wholly illusory."

The trial court specifically ruled that it had "neither the inclination nor the authority to overrule *Horn*" and followed the guidance of *Strickland*, not *Horn*. Because the trial court did not apply *Horn*, and because we cannot overrule *Horn* even if it is unconstitutional, we do not address Hunsaker's final argument. We are bound to follow the precedents set by the supreme court and are powerless to overrule its decisions. *Krieger v. State*, 2022 Ark. App. 456, 655 S.W.3d 321.

Affirmed.

KLAPPENBACH, C.J., and HARRISON, J., agree.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, and *Drew Curtis*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.